MIDDLESEX INSURANCE COMPANY *v.* JAMES J. QUINN III ET AL. (10356)

NORCOTT, LANDAU and HEIMAN, Js.

Argued February 18—decision released May 19, 1992

*John F. Wynne, Jr.,* for the appellant (named defendant).

*Frederick M. Vollono,* for the appellee (plaintiff).

*Stewart M. Casper* and *Joseph N. Varon* filed a brief for the Connecticut Trial Lawyers Association as amicus curiae.

NORCOTT, J. This appeal presents the narrow issue of whether an automobile insurer can exclude from uninsured motorist coverage a family member who lives in the insured's household and owns a vehicle not covered by the insured's policy. Under the circumstances of this case, we conclude that it may do so.

The named defendant, James J. Quinn III,[1] appeals from the trial court's decision vacating an arbitration panel's award in his favor and denying his application to confirm it. The defendant claims that the court improperly found that he is not entitled to uninsured motorist benefits because he is not a covered person as defined in the policy,[2] and was not operating a vehicle covered by the policy at the time he was involved in a two car collision. We affirm the judgment of the trial court.

---

[1] The plaintiff's application named both James J. Quinn III and his father as defendants. Only the named defendant has appealed. We will refer to him as the defendant.

[2] The Middlesex policy issued to the defendant's father provides in pertinent part: "You, your and yourself means the person named on the declarations page and the person's husband or wife if a resident of the same household.

"You, your and yourself also means a member of the family who is a resident of the household and who doesn't own a car or whose spouse doesn't own a car."

The following facts are undisputed. On February 12, 1984, while driving a car he owned, the defendant was injured in a collision in New Haven. The defendant recovered $20,000 from the tortfeasor, the full amount of liability insurance available. The defendant's car was insured for $100,000 bodily injury liability and $20,000 uninsured motorist coverage.

At the time of the collision, the defendant lived with his father, whom the plaintiff insured under two automobile liability policies covering five vehicles. Each of these vehicles was insured for $20,000 in uninsured motorist coverage. The defendant sought to aggregate these amounts and to collect $100,000 from the plaintiff. When the plaintiff denied coverage and refused to arbitrate the dispute, the defendant sought an order compelling arbitration. The trial court, *Purtill, J.*, issued such an order, which this court subsequently upheld. See *Quinn* v. *Middlesex Ins. Co.*, 16 Conn. App. 209, 547 A.2d 95, cert. denied, 209 Conn. 817, 550 A.2d 1085 (1988).

On February 1, 1991, the arbitration panel, in a two to one decision, awarded the defendant $83,333, with the plaintiff receiving $16,666.67 credit for the amount the tortfeasor had paid. The majority found that the policy's definition with respect to resident relatives is invalid and that the defendant is therefore a covered person under the plan. The dissent determined that the defendant is not a covered person and that our law does not require that he be covered under the circumstances of this case. On February 19, 1991, the plaintiff moved to vacate the arbitration award. The defendant subsequently moved to confirm it. On June 7, 1991, the trial court vacated the award and denied the motion to confirm. This appeal followed.

We begin first by setting forth our standard of review and the principles we must apply in our analysis of this

matter. When an arbitration panel's interpretation and application of the law is at issue, an appellate court must conduct a de novo review. *Streitweiser* v. *Middlesex Mutual Assurance Co.*, 219 Conn. 371, 375, 593 A.2d 498 (1991); *Chmielewski* v. *Aetna Casualty & Surety Co.*, 218 Conn. 646, 655 n.11, 591 A.2d 101 (1991). If the terms of the insurance policy at issue are ambiguous, any " 'limitation of liability on uninsured or underinsured motorist coverage must be construed most strongly against the insurer.' " *Streitweiser* v. *Middlesex Mutual Assurance Co.*, supra, quoting *American Universal Ins. Co.* v. *DelGreco*, 205 Conn. 178, 196, 530 A.2d 171 (1987). Because the policy language at issue here is plain on its face and not ambiguous, we next consider whether it nevertheless violates Connecticut law and public policy.

The defendant argues, in essence, that the plaintiff's policy definition constitutes impermissible exclusionary language under our insurance statutes and regulations. He relies heavily on our Supreme Court's decision in *Harvey* v. *Travelers Indemnity Co.*, 188 Conn. 245, 449 A.2d 157 (1982), and contends that the language at issue violates the strong public policy favoring compensation for victims of uninsured motorists that has been the hallmark of our legislative and regulatory history for twenty-five years. See *Streitweiser* v. *Middlesex Mutual Assurance Co.*, supra, 377.

As a backdrop to our resolution of the defendant's claims, we briefly review the public policy behind uninsured motorist coverage. In *Streitweiser* v. *Middlesex Mutual Assurance Co.*, supra, our Supreme Court stated that this policy is embodied in General Statutes (Rev. to 1989) § 38-175c,[3] now reorganized and recod-

---

[3] General Statutes (Rev. to 1989) § 38-175c provides: "UNINSURED MOTORIST COVERAGE. (a) (1) Every such policy shall provide insurance, herein called uninsured motorist coverage, in accordance with such regulations, with limits for bodily injury or death not less than those specified in subsection (a) of section 14-112, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators

ified as General Statutes § 38a-336 (b) and (d),[4] "which requires every automobile liability insurance policy to

of uninsured motor vehicles and underinsured motor vehicles and insured motor vehicles, the insurer of which becomes insolvent prior to payment of such damages, because of bodily injury, including death resulting therefrom, provided each insurer licensed to write automobile liability insurance in this state shall provide such uninsured motorists coverage with limits requested by the named insured upon payment of the appropriate premium, but such insurer shall not be required to provide such coverage with limits in excess of the limits of the bodily injury coverage of such policy issued to such named insured. No insurer shall be required to provide uninsured motorist coverage to (A) a named insured or relatives residing in his household when occupying, or struck as a pedestrian by, an uninsured or underinsured motor vehicle or a motorcycle that is owned by the named insured, or (B) to any insured occupying an uninsured or underinsured motor vehicle or motorcycle that is owned by such insured. Every such policy issued on or after October 1, 1971, which contains a provision for binding arbitration shall include a provision for final determination of insurance coverage in such arbitration proceeding. With respect to any claim submitted to arbitration on or after October 1, 1983, the arbitration proceeding shall be conducted by a single arbitrator if the amount in demand is forty thousand dollars or less or by a panel of three arbitrators if the amount in demand is more than forty thousand dollars.

"(2) Notwithstanding any provision of this section to the contrary, every such policy issued or renewed on and after July 1, 1984, shall provide uninsured motorist coverage with limits for bodily injury and death equal to those purchased to protect against loss resulting from the liability imposed by law unless the insured requests in writing a lesser amount, but not less than the limits specified in subsection (a) of section 14-112. Such written request shall apply to all subsequent renewals of coverage and to all policies or endorsements which extend, change, supersede or replace an existing policy issued to the named insured, unless changed in writing by the insured.

"(b) (1) An insurance company shall be obligated to make payment to its insured up to the limits of the policy's uninsured motorist coverage after the limits of liability under all bodily injury liability bonds or insurance policies applicable at the time of the accident have been exhausted by payment of judgments or settlements, but in no event shall the total amount of recovery from all policies, including any amount recovered under the insured's uninsured motorist coverage, exceed the limits of the insured's uninsured motorist coverage.

"(2) For the purposes of this section, an 'underinsured motor vehicle' means a motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the accident is less than the applicable limits of liability under the uninsured motorist portion of the policy against which claim is made under subdivision (1) of this subsection."

[4] Public Acts 1990, No. 90-243, § 127.

include such coverage 'for the protection of persons insured thereunder who are legally entitled to recover damages . . . .' " The accompanying regulation, § 38-175a-6 (a)[5] of the Regulations of Connecticut State Agencies, accordingly provides that the " 'insurer shall undertake to pay on behalf of the insured all sums which the insured shall be legally entitled to recover . . . .' " *General Accident Ins. Co.* v. *Wheeler,* 221 Conn. 206, 211, 603 A.2d 385 (1992).

The court in *Streitweiser* further stated that "[t]his regulatory pattern establishes the public policy that 'every insured is entitled to recover for the damages he or she would have been able to recover if the uninsured motorist had maintained a policy of liability insurance. . . .' " *Streitweiser* v. *Middlesex Mutual Assurance Co.,* supra, 377, quoting *Harvey* v. *Travelers Indemnity Co.,* supra, 249. To implement this policy, our Supreme Court has repeatedly held that " 'an insurer may not, by contract, reduce its liability for such uninsured or underinsured motorist coverage except as § 38-175a-6 of the Regulations of Connecticut State Agencies *expressly* authorizes.' " (Emphasis added.) *Streitweiser* v. *Middlesex Mutual Assurance Co.,* supra, quoting *Allstate Ins. Co.* v. *Ferrante,* 201 Conn. 478, 483, 518 A.2d 373 (1986). In this case, we note that the regulation does not expressly permit an insurer to exclude from coverage residents of an insured's household who own cars.

---

[5] Section 38-175a-6 of the Regulations of Connecticut State Agencies provides: "MINIMUM PROVISION FOR PROTECTION AGAINST UNINSURED MOTORISTS

"(a) Coverage. The insurer shall undertake to pay on behalf of the insured all sums which the insured shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured caused by an accident involving the uninsured motor vehicle. This coverage shall insure the occupants of every motor vehicle to which the bodily injury liability coverage applies. 'Uninsured motor vehicle' includes a motor vehicle insured against liability by an insurer that is or becomes insolvent. . . ."

Although this history would seem to support the defendant's claims, such is not the case. In *Smith* v. *Nationwide Mutual Ins. Co.*, 214 Conn. 734, 573 A.2d 740 (1990), our Supreme Court upheld the validity of policy language similar to that before us in this case. The plaintiff in *Smith,* a passenger, was injured in an automobile collision. She argued that she was entitled to underinsurance benefits under the policy of the driver's father because the driver was a covered person under that policy. The father's "policy explicitly excluded from coverage 'any vehicle other than your covered auto which is owned by a family member.' Thus, it did not provide liability coverage to [the son] while he was driving his own vehicle, a vehicle not covered by the policy." Id., 737.

Relying on *Harvey* v. *Travelers Indemnity Co.,* supra, the plaintiff in *Smith* further argued that the policy language should be eliminated in the context of uninsured and underinsured motorist coverage. *Harvey,* she claimed, holds that "uninsured motorist coverage attaches to the insured person and therefore 'an insured party may receive the benefits of a policy even though not occupying a vehicle insured under the policy.' " *Smith* v. *Nationwide Mutual Ins. Co.,* supra. The court rejected these claims, finding that prohibition of such language would not advance the public policy embodied in General Statutes § 38-175c and § 38-175a-6 (a) of the Regulations of Connecticut State Agencies. The court declared that *Harvey* holds "that the public policy embodied in § 38-175c directs that *uninsured motorist coverage* is 'person oriented' and therefore must be provided to insureds while they are occupants of insured vehicles or uninsured vehicles. . . . 'The coverage attaches to the insured person, not the insured vehicle.' . . . In *Harvey* we ruled that the plaintiff, *an insured under his mother's policy,* was entitled to coverage under *that policy,* even though he was injured

while occupying a vehicle owned by his father which was not insured." (Citations omitted; emphasis in original.) Id., 738–39.

The distinguishing factor, therefore, between *Harvey*, where coverage was allowed, and *Smith*, where coverage was denied, is that in the former case the plaintiff was insured under the policy at issue, whereas in the latter case the plaintiff was not. Id., 739. Applying the teaching of these cases, we conclude that the defendant is not covered because he is not an *insured person* under the definitional language at issue, which violates neither law nor public policy. See also *Carley* v. *Lumbermens Mutual Casualty Co.*, 10 Conn. App. 135, 142–43, 521 A.2d 1053 (1987) (language in father's policy defining "non-owned" automobile precludes coverage for relatives living in father's household).

The result we reach in this case is in accordance with the public policy embodied in General Statutes § 38-175c, which directs that uninsured motorist coverage applies "to *insureds* while they are occupants of insured vehicles or uninsured vehicles. . . . 'The coverage attaches to the *insured person* . . . .' " (Citation omitted; emphasis added.) *Smith* v. *Nationwide Mutual Ins. Co.*, supra. It also accords with the language of § 38-175a-6 (a) of the Regulations of Connecticut State Agencies, which requires the insurer " 'to pay on behalf of *the insured* all sums which *the insured* shall be legally entitled to recover . . . .' " (Emphasis added.) *General Accident Ins. Co.* v. *Wheeler*, supra. The plaintiff's policy provides coverage when the claimant is (1) a family member (2) who is a household resident and (3) who does not own a car. At the time of the collision, the defendant was a family member and a household resident, but, because he owned a car, coverage did not extend to him.

The defendant also claims that the policy's definitional language is, in reality, an exclusion because it both "provides coverage for Quinn and takes it away in the same sentence." In his brief, the defendant suggests that such language could have been placed in that portion of the policy called "Those Not Protected," where it also would be subject to invalidation. We decline to read into the policy any such devious maneuverings on the part of the plaintiff and find that the language at issue is not exclusionary but definitional.

In *Hammer* v. *Lumberman's Mutual Casualty Co.*, 214 Conn. 573, 573 A.2d 699 (1990), our Supreme Court discussed when an "exclusion" arises in an insurance policy. " 'In an insurance policy, an exclusion is a provision which eliminates coverage where, were it not for the exclusion, coverage would have existed.' " Id., 588. Thus, " 'before the need for an exclusion arises, there must first be coverage within the defined scope of the policy.' " Id., 589. It is clear, then, that before policy language can be said to be exclusionary, it must first provide coverage. In this case, because the defendant is not a covered person under the policy, the language at issue is not exclusionary.

Finally, the defendant argues that the plaintiff's policy language represents a subtle attempt to prevent him from stacking insurance coverage. We disagree.

Although the defendant correctly points out that our Supreme Court has rejected attempts to limit stacking in personal automobile liability policies; see, e.g., *Allstate Ins. Co.* v. *Ferrante,* supra; *Nicolletta* v. *Nationwide Ins. Co.*, 211 Conn. 640, 645–46, 560 A.2d 964 (1989); this argument assumes its conclusion because it presupposes that the defendant is entitled to stack coverage. "It is self-evident that, in all cases of 'stacking,' the injured person can only have been the occupant of one of the multiply-insured vehicles." *All-*

*state Ins. Co.* v. *Ferrante,* supra, 486. Because our insurance statutes are " 'person oriented' rather than 'vehicle oriented,' [our Supreme Court has] emphasized that insurance coverage 'attaches to *the insured person,* not the insured vehicle.' . . . From that perspective, the crucial question is whether an injured person has coverage under the terms of the policy . . . ." (Citations omitted; emphasis added.) Id. As stated above, that question, in this case, must be answered in the negative. Because the defendant is not a covered person, he is therefore not entitled to stack coverage under the plaintiff's policy.

Finally, we note that our Supreme Court has recently barred attempts to aggregate coverage, particularly when, as here, the results would be unexpected and bizarre. See, e.g, *Chmielewski* v. *Aetna Casualty & Surety Co.,* supra, 671 (premium of $262 would purchase $40,500,000 of coverage); *Wilson* v. *Security Ins. Co.,* 213 Conn. 532, 536, 569 A.2d 40, cert. denied, U.S. , 111 S. Ct. 52, 112 L. Ed. 2d 28 (1990) (premium of $137 would purchase $38,440,000 of coverage); *Cohn* v. *Aetna Ins. Co.,* 213 Conn. 525, 531, 569 A.2d 541 (1990) (premium of $73 would purchase $19,360,000 of coverage); see also *Broderick* v. *Ins. Co of North America,* 25 Conn. App. 673, 676, 596 A.2d 18 (1991) (premium of $58 would purchase $2,000,000 of coverage). Permitting the defendant to stack coverage on the plaintiff's policy would lead to the absurd result that any number of the insured's relatives residing in the household could stack coverage on one or all of each other's policies, regardless of whether they are insured persons under those policies. Such a practice would lead to results far beyond the reasonable expectations of both insurer and insured. *Chmielewski* v. *Aetna Casualty & Surety Co.,* supra, 670; *Cohn* v. *Aetna Ins. Co.,* supra, 530. We decline to venture down any such "judicial primrose path"; *Carley* v. *Lumbermens Mutual*

*Casualty Co.,* supra, 143; that could potentially wreak the financial havoc with our system of insurance that now faces our national banking system in the aftermath of the savings and loan debacle. Because our Supreme Court has repeatedly and unequivocally rejected such unwarranted expansions of stacking, we decline to diverge from its path.

The judgment is affirmed.

In this opinion HEIMAN, J., concurred.

LANDAU, J., dissenting. My reasons for dissenting are two-fold. First, I believe that § 38-175a-6 of the Regulations of Connecticut State Agencies precludes the plaintiff insurance carrier from excluding from coverage residents of a policyholder's household who own their own cars, and, second, I respectfully contend that the majority's reliance on *Smith* v. *Nationwide Mutual Ins. Co.,* 214 Conn. 734, 573 A.2d 740 (1990), is misplaced. I agree with the majority to the extent that it recognizes that an insurer may not, by contract, reduce its liability for such uninsured or underinsured motorist coverage except as § 38-175a-6 of the Regulations of Connecticut State Agencies *expressly* authorizes. See *Allstate Ins. Co.* v. *Ferrante,* 201 Conn. 478, 483, 518 A.2d 373 (1986). It is at this point, however, that I part company with my brethren.

Section 38-175a-6 expressly authorizes an insurer to limit its liability to the extent that damages have been paid (1) by or on behalf of any person responsible for the injury, (2) have been paid or are payable under any workers' compensation or disability benefits law, (3) have been paid under the policy in settlement of a liability claim, or (4) have been paid or are payable under any provisions of the policy for direct indemnity for medical expenses or basic reparations benefits.[1] The regu-

---

[1] Regs., Conn. State Agencies § 38-175a-6.

lation nowhere authorizes an insurer to exclude from coverage individuals residing in the home of the policy holder who own their own automobiles.

The majority inappropriately relies on *Smith* v. *Nationwide Mutual Ins. Co.*, supra, in upholding the policy language and thereby reaching the conclusion that the defendant is not an insured under the policy. The policy in *Smith* provided that "[w]e will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident." Id., 736. "Covered person" was defined as "you or any family member for the ownership, maintenance, or use of any auto or trailer." Id. The policy, however, explicitly excluded from coverage "any *vehicle* other than your covered auto which is owned by any family member." (Emphasis added.) Id., 737. Because the exclusion in *Smith* addressed a class of automobiles rather than a class of individuals, the exclusion did not violate the public policy underlying the "person oriented" nature of uninsured motorist insurance.

In the policy at issue here, a covered person is defined as, inter alia, "a member of the family who is a resident of the household and who doesn't own a car or whose spouse doesn't own a car." The definition excludes the defendant, who is a family member and resident of the policyholder's household, on the sole basis of his status as a vehicle owner. Unlike the exclusion in *Smith,* the limitation here addresses a class of individuals and therefore undermines the public policy considerations in General Statutes (Rev. to 1989) § 38-175c and § 38-175a-6 of the Regulations of Connecticut State Agencies. Thus, because of the "person oriented" nature of uninsured motorist insurance, which the majority acknowledges, an exclusion premised on whether an individual, who otherwise would be covered, owned a vehicle, cannot stand.

A similar issue was addressed by our Supreme Court in *Streitweiser* v. *Middlesex Mutual Assurance Co*, 219 Conn. 371, 593 A.2d 498 (1991). In *Streitweiser*, the issue was whether our state legislative policy mandating insurance protection for someone injured by an identified uninsured motorist extends to someone injured as a result of an unidentified motorist who has no physical contact with the injured claimant. The policy limited coverage to " 'a hit and run vehicle whose operator or owner cannot be identified and which hits' a covered person or auto." Id., 376. The plaintiff argued that because public policy favors uninsured motorist coverage, and because § 38-175a-6 of the Regulations of Connecticut State Agencies did not expressly authorize an insurer to reduce its liability in such a manner, the defendant was precluded from contractually excluding from uninsured motorist coverage the plaintiff's right to recover for injuries sustained where there was no physical contact. The court acknowledged that because the regulations contained no express authorization to reduce the uninsured motorist coverage, the question should be resolved in favor of insurance coverage, but felt constrained by two earlier cases where coverage had been denied. See *Weingarten* v. *Allstate Ins. Co.*, 169 Conn. 502, 507, 363 A.2d 1055 (1975), and *Rosnick* v. *Aetna Casualty & Surety Co.*, 172 Conn. 416, 423, 374 A.2d 1076 (1977). In light of this dilemma, the court chose to reconsider *Weingarten* and *Rosnick*, and, in so doing, overruled both cases. Accordingly, I would hold that the defendant is an individual covered under the policy, despite the definitional language to the contrary.

I would therefore reverse the decision of the trial court.