[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The above cases came before the court upon motions to vacate and to confirm the arbitration awards in proceedings involving disputed coverage and applications of credits in the context of underinsured motorist insurance provisions under two automobile insurance policies.
The Dunlop case, docket #91-0322973, commenced with an application to compel arbitration of the claims of the administratrix of the Estate of Kerry Dunlop ("Dunlop" and "claimant") against Peerless Insurance Company ("Peerless") and Government Employees Insurance Company ("GEICO"), which was granted by the court, DeMayo, J. The underinsured motorist claims of Dunlop against Peerless and against GEICO proceeded in CT Page 1391 one presentation to two arbitration panels, with the same arbitrators selected by the claimant and insurer in each, but with different neutral arbitrators.
The arbitrations concerned claims for benefits arising from a motor vehicle collision on November 24, 1990, in which Kerry Dunlop was killed while a passenger in a car owned by Paul Humphrey and driven by his son, Christopher Humphrey. The Humphrey car was insured by GEICO. The Humphrey car collided with a car operated by Veronica Bercier and owned by her husband, William Bercier.
Kerry Dunlop lived with her mother, Marianne Dunlop, at the time of the accident and was an insured under her mother's automobile insurance coverage with Peerless.
The Humphrey vehicle had liability coverage in the amount of $100,000. per person, and that amount was paid to Kerry Dunlop's estate. The Bercier vehicle also had liability coverage of $100,000. per person, and that amount was paid to Kerry Dunlop's estate.
The underinsured motorist coverage under the Humphrey/GEICO policy is $100,000. for each of three vehicles. The underinsured motorist coverage ("UM") in the Dunlop/Peerless policy is $300,000.
Both GEICO and Peerless stipulated that the claimant had exhausted the available liability coverages.
The issues submitted to the arbitrations panels were 1) the amount of damages and 2) coverage of the claim under each insurance policy (Tr. p. 12), 3) allocation of the liability between Humphrey and Bercier (Tr. 13, 14), 4) determination how the two liability payments in the amount of $100,000, should be credited, and 5) whether any underinsured motorist exposure to GEICO should be reduced by payments made to another claimant in the Humphrey car.
GEICO conceded that if its underinsured motorist coverage was applicable, its coverage was primary and the Peerless coverage was secondary (Tr. 16).
The parties agreed that the claims against GEICO would be decided by arbitrators Swirsky, Dobrowolski and Cooper and that CT Page 1392 the claims against Peerless would be decided by arbitrators Shay, Dobrowolski and Cooper (Tr. 48).
A majority of the arbitrators ruled that the total damages were $600,000. and that the claimant was entitled to a net award of $200,000. under the GEICO UM coverage. The same two arbitrators determined that the claimant was entitled to $198,982.40 under the Peerless UM coverage (reflecting reduction of basic reparations benefits paid).
GEICO has moved to vacate the award against it. The claimant has moved to confirm the awards. At oral argument, Peerless took the position that the awards should be confirmed and that the claimant could not assert any "contingent" applications to set aside the award as to Peerless if the award as to GEICO is vacated.
Scope of Review
In its brief, GEICO states that it is pressing only four of the issues stated in its application to vacate, and those issues not briefed will be deemed abandoned. The four issues are as follows:
 1. failure of the arbitrators to credit GEICO's $100,000. liability payment against the $300,000. UM coverage limits;
 2. failure of the arbitrators to credit the $100,000, liability payments received from Bercier against GEICO's UM coverage;
 3. an erroneous ruling that the claimant was entitled to UM coverage when she had received the limit of liability coverage under the same policy; and
 4. failure of the arbitrators to apportion liability between Humphrey and Bercier as tortfeasors and to hold that there is no coverage under the GEICO policy for damage arising CT Page 1393 from the negligence of Humphrey.
The GEICO policy provides for arbitration of both damages and coverage issues. The claimant seeks to characterize the issues raised by GEICO as being issues other than "coverage" issues. Issues 1-3 all concern the claimant's eligibility to receive benefits under the UM coverage furnished by GEICO, that is, the entitlements of the claimant as a beneficiary of the GEICO insured contract. They are coverage issues, and the arbitration of these issues must be recognized as having been compelled by 38a-336(c) C.G.S. The arbitrators' rulings on these issues are therefore subject to de novo review as to the interpretation and application of the law by the arbitrators. American Universal Insurance Co. v. DelGreco, 205 Conn. 178, 191
(1987). Construction of the contract of insurance is a question of law. Aetna Life Casualty Co. v. Bulaong, 218 Conn. 51, 58
(1991).
The fourth issue involves an objection to the arbitrators' approach to determining liability: specifically, the extent to which the claimant's injuries were attributable to each of the claimed tortfeasors. Submission to arbitration of such a blended issue of liability and damages is not required by 38a-336 C.G.S. Since the arbitration of this issue was not compelled, the scope of review is limited to an inquiry whether the award conformed to the submission. Bodner v. USAA, 222 Conn. 480, 488 (1992). Moreover the extent of the fault of each of the drivers was a factual question, not a determination of the construction of the insurance contract. See Aetna Life Casualty Co. v. Bulaong supra, at 59.
The award suggests that the arbitrators resolved the issue of damages on the basis that the drivers were equally at fault in causing the accident and the damages to Dunlop. That implicit determination is not subject to de novo review.
Coverage
The court will first take up the claim that Dunlop was not entitled to resort to underinsured motorist coverage under the GEICO policy because she had received in full the liability limit of that policy. In setting forth the coverage furnished, the GEICO policy states that it provides "protection for you and your passengers for injuries caused by uninsured/underinsured and hit-and-run motorists" (Ex. A, p. 23). Specifically, the CT Page 1394 contract provides that:
 Under this coverage, we will pay damages for bodily injury caused by accidents which the insured is legally entitled to recover from the owner or operator of an . . . underinsured motor vehicle . . . arising out of the ownership, maintenance or use of that motor vehicle. Ex. A, p. 26.
It is not disputed that Dunlop was an insured for purposes of underinsured motorist coverage, however the definition that precedes the above statement of coverage states that:
 [t]he term "underinsured motor vehicle" does not include: 1) an insured auto . . . .
The definition applicable to the underinsured motorist coverage defines "insured auto" as an auto:
 a) described in the declaration and covered by the bodily injury liability coverage of the policy;
 b) which is a temporary substitute auto; or
 c) operated by you or your spouse if a resident of the same household.
To support the permissibility of this restriction, GEICO invokes 38a-336(a)(1) C.G.S., which provides that "[n]o insurer shall be required to provide uninsured motorist coverage . . . (b) to any insured occupying an uninsured or underinsured motor vehicle or motorcycle that is owned by such insured." This portion of the statute would authorize an exclusion by which the owner of the Humphrey car would not receive both liability and underinsured benefits if injured in a collision involving that car. It would also authorize exclusion if Dunlop was occupying a car owned by her.
This provision does not allow exclusion where Dunlop was an CT Page 1395 insured by virtue of being a passenger in the car of another insured, where she did not own the car in which she was killed. She was not, within the meaning of 38a-336(a)(1) C.G.S. either a named insured or an insured occupying an underinsured motor vehicle owned by "such insured", that is, by her. It is well-settled that an insurer may not exclude from uninsured/underinsured coverage any situation other than the exclusions authorized by law. Streitweiser v. Middlesex Mut. Assur. Co., 219 Conn. 371, 377 (1991). GEICO gains nothing by trying to characterize its position as a "definitional restriction" rather than an exclusion. A definition that limits coverage to an extent different from the coverage required by law is an exclusion of coverage that cannot be given effect. GEICO's reliance on Smith v. Nationwide Mutual Ins. Co., 214 Conn. 734
(1990) and Middlesex Insurance Co. v. Quinn, 27 Conn. App. 573
(1992) is misplaced. The coverage at issue in those cases was not less extensive than was required by the no-fault statute, which did not regulate the insurer's definition of its "insured", that is, the person or persons to whom coverage would be provided. The effect of 38a-336 is to prevent insurers from limiting the scope or uninsured/underinsured coverage to insureds other than in the ways authorized. Dunlop is indisputably an "insured" within the policy definition: "(d) any other person occupying an insured auto." (Ex. A., p. 24), and GEICO's effort is not to define the universe of insureds but to reduce UM coverage to them in a manner unauthorized by statute.
The arbitrators did not err in determining that Dunlop was entitled to UM benefits under the GEICO policy.
Reductions
Both the GEICO and the Peerless UM coverages provide for reduction of sums paid by persons liable for the injury; and the GEICO policy provides for reduction of UM benefits by the amount paid under the liability provisions of the policy. The arbitrators reduced the GEICO coverage by $100,000. They also reduced the Peerless UM coverage by $100,000.
GEICO claims that this approach failed to give effect to the provision in its policy entitling it to deduct both amounts paid under the liability coverage and amounts paid by other tortfeasors. It claims that since its coverage is primary and Peerless' is excess, it is entitled to all the reductions, that is, to $200,000. in reductions. For this proposition GEICO cites CT Page 1396 only Aetna Casualty Surety v. CNA Insurance Co., 221 Conn. 779
(1992). In that case, there were two UM insurers, and the arbitrators treated Aetna's coverage as primary and gave Aetna credit for the amount received from a tortfeasor and ordered the carrier it found to be an excess carrier to pay the remaining amount. The trial court ruled that the coverage should have been pro-rated. It does not appear that the allocation to Aetna of the credit for the tortfeasor's payment, see Aetna Casualty 
Surety v. CNA Insurance Co., supra, at 783 n. 2, was an issue either before the trial court or on appeal and the Supreme Court's silence on that allocation does not establish approval of the method used, especially since Justice Berdon noted that "[t]he sole issue in this appeal concerns the validity of `other insurance' clauses that are used to determine the order of the obligation to provide coverage between insurers furnishing underinsured motorist coverage to a claimant." Aetna Casualty 
Surety v. CNA Insurance Co., supra, at 780 [emphasis supplied].
The parties have not cited, and the court has been unable to locate, any appellate Connecticut cases indicating how reductions are to be made under where two UM coverages apply. In a similar situation, the Court of Appeals of Georgia, in Georgia Farm Bureau Mutual Insurance Company v. State Farm Mutual Automobile Insurance Company, 328 S.E.2d 737 (Ga.App. 1985), pro-rated the reductions. The court reasoned that the purpose of allowing reductions is to limit the claimant's recovery to the total amount of the underinsured coverage, so that the UM insurers get the benefit of payments by tortfeasors, whether under the liability provision of their own policies or from other parties. To allow a tortfeasor's payment to be deducted in full from each of two policies would be to reduce the claimant's total coverage below the total UM coverage. Pro-rating avoids this result while giving effect, to an equal extent, to the reduction clauses of both policies. As the court pointed out in Georgia Farm Bureau Mutual, supra, at 740, pro-rating the reduction gives at least partial effect to the intent of both insurers.
While Aetna v. CNA, supra, is concerned with the validity of "other insurance" claims in general, not with the application of reductions or credits, the Supreme Court in that case noted that "other insurance" clauses were enforceable only "as long as their enforcement does not compromise coverage for the insured." Aetna v. CNA, supra, at 783. To allow both UM insurers to deduct in full the same $100,000. payment from Bercier and to allow the Humphrey liability payment to be deducted both from the GEICO UM CT Page 1397 coverage and from the Peerless coverage would be to allow $400,000. in reductions for only $200,000. of receipts. Section 38-175a-6(d) of the applicable insurance regulations does not allow the limits of an insurer's liability to be reduced by amounts greater than the amounts "paid" to the claimant. Since the claimant has been paid $200,000, not $400,000, and since the courts should, to the extent authorized by the statute and regulations, give effect to the provisions in contracts of insurance, see Aetna v. CNA, it is consonant with the provisions of regulations 38-175a-6(d) to pro-rate the allowable reductions totalling of $200,000. between two insurers equally entitled to claim them.
Since the arbitrators allocated to GEICO $100,000, or half of the total reductions authorized by the regulation, the court finds no error in the award.
Conclusion
As to those issues subject to de novo review, GEICO has not established that the arbitrators exceeded their powers pursuant to 52-418(a) C.G.S. The application to confirm the award against GEICO is granted; the application to vacate is denied.
The administratrix shall recover her costs in both cases.
Beverly J. Hodgson Judge of the Superior Court